## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| BRENDA WALKER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12cv547 |
| | ) | |
| ASSET ACCEPTANCE, LLC | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION TO OVERRULE OBJECTIONS AND TO COMPEL
### FULL DISCOVERY RESPONSES BY ASSET ACCEPTANCE, LLC

COME NOW the Plaintiffs, Brenda Walker and Elethrios Shizas, by counsel, and as for their Memorandum in Support of Their Motion to Overrule Objections and to Compel Full Discovery Responses By Asset Acceptance, LLC, they state as follows:

### INTRODUCTION

Asset Acceptance, LLC ("Asset Acceptance") has refused to answer most of Plaintiffs' First Set of Interrogatories (attached hereto as Exhibit "A") or produce nearly any of the documents requested in Plaintiffs' First Set of Requests for Production of Documents (attached hereto as Exhibit "B"). In doing so, they assert vague, generalized objections and claims of privilege and other protections from disclosure without compliance with the Federal Rules of Civil Procedure. Indeed, they have not even provided the basic sets of collection logs and call logs (or even a description of them) that most debt collectors provide at the outset of the case, as the rules require. Fed. R. Civ. P. 26(a)(1)(A).

Plaintiffs served their First Set of Interrogatories and Requests for Production of Documents on December 6, 2013 via first class and electronic mail. On December 26, 2012 (five days after its

1

objections were due), Defendant asked for an extension until December 28, 2012 to serve its objections. Plaintiffs agreed to the extension and the Defendant emailed and mailed its objections to Plaintiffs' First Set of Interrogatories (attached hereto as Exhibit "C") and objections to Plaintiffs' First Requests for Production of Documents (attached hereto as Exhibit "D") on December 28, 2012. On January 7, 2013, Defendant's counsel emailed Plaintiffs' counsel and asked for an extension to respond to the remaining discovery by January 11, 2013. Plaintiffs' counsel agreed to the extension and the Defendant sent its responses to Plaintiffs' First Set of Interrogatories (attached hereto as Exhibit "E") and its responses to Plaintiffs' First Requests for Production of Documents (attached hereto as Exhibit "F") on January 11, 2013. On January 17, 2013, Defendant also provided a First Supplemental Responses and Objections to Plaintiffs' First Requests for Production (attached hereto as Exhibit "G") in which it supplemented its responses for Request Nos. 17 and 21. To date, Defendant has not provided a privilege log to the Plaintiffs at any time.

In addition, despite the two extensions that the Defendant received, it objected to every single discovery request. It is inconceivable that Plaintiffs' counsel was entirely incapable of drafting even one Interrogatory or Request for Production that was not objectionable. Further, some of these objections are nonsensical. *See e.g.*, Ex. C, at 3, Def.'s Specific Objection to Pls.' Interrog. No. 2 (objecting to Plaintiffs' second Interrogatory because it exceeds the 25 interrogatory limit set forth in FED. R. CIV. P. 33(a)(1).[1] Many of the Defendant's answers also stated that it would produce the documents that it deemed responsive subject to an appropriate protective order, yet it failed to move for a protective order.[2] Nor could it do so in good faith. For example, with regard to the software manuals sought by the Plaintiff, the same dialer software has been sold by Ontario Systems to hundreds, if not thousands of other companies. Withholding these documents is

---

[1] The Defendants also objected to Interrogatories Nos. 4, 5, 17 and 19 as exceeding the maximum number of Interrogatories allowed under FED. R. CIV. P. 33. *See* Ex. C.
[2] *See* Def.'s Resp. to Pls.' Interrog. Nos. 8-9, 11-15, Ex. C, at 8- 9, 11-14; Def.'s Resp. to Pls.' Req. for Production of Docs. Nos. 1-4, 5, 9-12, 17-18, 21, 22, Ex. D, at 3-6, 8-10, 13-17.

analogous to a party's efforts to withhold the installation guide for Microsoft Windows.  Further, it is inconceivable how the Defendant's internal records regarding the Plaintiffs would qualify as "trade secrets" or would otherwise meet the high standards required to justify a order demanding their secrecy or requiring their sealing upon filing.  However, the Defendant never moved for the entry of a protective order, despite that it has been aware since December 18, 2012 that Plaintiffs intended to take its deposition on January 21 and 22, 2013 regarding the topics that these documents relate to. (These depositions were ultimately postponed).  In fact, it was not until January 16, 2013, after Plaintiffs requested a meet and confer phone call that a protective order was finally agreed upon so that the trial date could remain intact.[3]  Plaintiffs strongly disagree that a protective order is necessary or that the absence of a protective order provided justification of the Defendant to withhold production. Discovery presently closes on February 1, 2013, although Plaintiffs and Defendant are continuing to work through the terms of an agreed order extending the discovery cutoff.

The very few answers that the Defendant did provide in response to Plaintiffs' discovery requests are minimal at best. Many of Plaintiffs' requests for production went completely unanswered. The documents that were produced were largely documents that are publically available through the Virginia General District Courts. Furthermore, several of its responses to Plaintiffs' interrogatories and requests for production were simply copied and pasted into several responses, with very little or no variation. *See* Ex. E, at 3-4, 5, 12-15; Ex. F, at 6-10.

---

[3] Despite agreeing to the entry of a blanket protective order, Plaintiffs anticipate that the Court will need to rule on the propriety of the Defendant's designations before trial.  For example, the Defendant has asserted the need for a protective order relating to Plaintiffs' request for all communications between them and the Defendant.  *See, e.g., Def's Objection to Int No. 8 and Req for Prod. No. 2.*  Plaintiffs stipulate that the courtroom need not be sealed if these documents or communications are used or referenced.

The answers that the Defendant did provide were almost always answered "subject to and without waiving the above-referenced objections".[4] These sorts of answers are improper under the Federal Rules of Civil Procedures and have been harshly criticized by judges in this Division and District. *See Cappetta v. GC Servs., Ltd. P'ship*, Civ. No. 3:08CV288 (E.D. Va. Dec. 24, 2008), ECF No. 65 (Lauck, Mag. J.) (attached hereto as Exhibit "H")). The Federal Rules of Civil Procedure require that the grounds for any objection to an interrogatory must be "stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4). *See also Cappetta*, Civ. No. 3:08CV288, at 4. Additionally, an objection to part of a request for production of documents must be specifically stated, and the producing party must permit inspection of the non-objectionable part. FED. R. CIV. P. 34(b)(2)(C). *See also Cappetta*, Civ. No. 3:08CV288, at 4. Bare objections do not meet the standard for a successful objection. *Cappetta*, Civ. No. 3:08CV288, at 6.

In an attempt to resolve these discovery issues, counsel for both parties took part in meet and confer efforts over the past several weeks.  Plaintiffs went through each of Defendant's objections to the requested discovery, identifying the impropriety of the objections and why each request was relevant. Plaintiffs agreed to limit and/or withdrawal several of their discovery requests in order to facilitate production of the requested discovery and ultimately, settlement. However, the Defendant made no concessions in this call. When questioned about its position on each objection and whether the improper objections would be withdrawn, Defendant's counsel indicated that he needed to speak to his client, but provided no indication of whether the Defendant would stand on the objection. After nearly an hour on the phone, Defendant's counsel stated that he would have a discussion with his client the next day to hopefully resolve these issues. As discussed, counsel for both parties met in person on January 17, 2013 where Plaintiffs' counsel went a step further and provided Defendant

---

[4] *See* Def.'s Resp. to Pls.' Interrog. Nos. 1, 3-4, 6-14, 16, Ex. C, at 3-6, 8-14; Def.'s Resp. to Pls.' Req. for Production of Docs. Nos. 1, 2, 3, 4, 5, 9, 10, 11, 12, 15, 16, 17, 18, 21, 22, Ex. D, at 3-6, 8-10, 12-14, 16.

with some of the account numbers related to Ms. Walker. However, during this discussion, the Defendant still failed to withdraw any of its objections or provide any of the requested discovery. As of the filing of this motion, Plaintiffs—apparently now engaged in a game of "Battleship"—have now provided the Defendant with every possible telephone number the Defendant may have called and the account number for every Asset Acceptance account known to them, asking the Defendant to provide at least the relevant call logs so that the mediation session scheduled for February 6, 2013 might be productive.

Despite that the parties will jointly move the court for an extension of discovery, the close of discovery as presently set is imminent and Plaintiffs have engaged in the meet and confer process to obtain discovery compliance from the Defendant without court intervention. Plaintiffs finally requested that the Defendants provide a list of the objections that would be withdrawn (if any), no later than January 30, 2013. The Defendants indicated that they would do so. Still, nothing has been forthcoming. As a result, Plaintiffs are left with no other choice but to file this motion.

## ARGUMENT

**A.    Asset Acceptance's General Objections Are Not Permitted By Rule 34.**

As discussed above the Federal Rules of Civil Procedure require that the grounds for any objection to an interrogatory or a request for production of document must be specifically stated. FED. R. CIV. P. 33(b)(4); Additionally, a party objecting to a request for production of documents party must permit inspection of the non-objectionable part. FED. R. CIV. P. 34(b)(2)(C).

General blanket objections do not comply with these provisions of the Federal Rules of Civil Procedure and courts have uniformly expressed their disfavor for them. *See, e.g., Cappetta*, Civ. No. 3:08CV288, at 4; *Pulsecard, Inc., v. Discover Card Servs.*, 168 F.R.D. 295, 303 (Kan. 1996); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000). "'General objections are not useful to the court ruling on a discovery motion,' and a bare objection

does not meet the standard for a successful objection." *Cappetta*, Civ. No. 3:08CV288, at 6 (quoting *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 58 (D.D.C. 1984)). In fact, Courts in the Fourth Circuit routinely hold that general objections to discovery requests, without more, are invalid. *See, e.g., Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10CV1265, 2011 WL 1584764, at *1 (S.D. W. Va. Apr. 26, 2011); *Mainstreet Collection, Inc. v. Kirklands, Inc.*, 270 F.R.D. 238 (E.D.N.C. 2010) (finding that a mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. W. Va. 2010) ("[G]eneral objections to discovery, without more, do not satisfy the burden of the responding party . . . because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. E. Gulf Coast Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008) (stating that the court disapproves of a general objection asserted "to the extent" that it applies); *Marens v. Carrabba's Italian Grill*, 196 F.R.D. 35, 37 (D. Md. 2000) (determining that an objection due to overburden must articulate with specificity the nature and costs associated with the claimed burden and why these are alleged to outweigh the goal of liberal discovery)

Blanket objections and mere conclusions are never proper or sufficient. *See Marens*, 196 F.R.D. at 37; *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 182–183 (E.D. Cal. 1991); *see also Cappetta*, Civ. No. 3:08CV288, at 4. Courts have routinely granted motions to compel and even sanctions where a party responding to discovery utilizes frivolous, boilerplate objections. Such obstructionist tactics are not to be condoned. The only way to combat this practice is to penalize those who thwart court orders and interpose improper, frivolous, deplorable objections to discovery. *St. Paul Reinsurance Co., et al v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa.

2000). As a result, a party's reliance solely upon general objections is injudicious and often results in the unintentional waiver of the objection; *Kelly*, 2011 WL 1584764, at *1; *Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226 (M.D.N.C. 2010).

Because the Defendant's general objections are not proper under the Federal Rules of Civil Procedure and do not specifically identify the portion of the interrogatory or request to which they object, they should be stricken.

**B.     Asset Acceptance's "Relevance" Objections Are Improper.**

Throughout its objections to Plaintiffs' First Set of Interrogatories (attached hereto as Exhibit "C") and its objections to Plaintiffs' First Set of Requests for Production of Documents (attached hereto as Exhibit "D"), Asset Acceptance has taken the position that information and documents sought by the Plaintiffs are not relevant. It seeks to withhold from discovery information and documents that it has unilaterally deemed irrelevant. While Plaintiffs very much believe that the discovery sought is relevant, it is inarguable that these requests are at least "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

Under Rule 26(b), the Plaintiffs may discover any materials that are not privileged if the materials requested are reasonably calculated to lead to the discovery of admissible evidence. Rule 26 is very broad, permitting a wide range of inquiry at the pre-trial stage. If there is any possibility that the information sought may be relevant, the court should permit the discovery. *Hickman v. Taylor*, 329 U.S. 495 (1947). The policy underlying this rule is to promote fair litigation, through mutual knowledge of relevant facts. Therefore, the rule is to be liberally interpreted in favor of granting discovery. *Hickman*, 329 U.S. at 507. Furthermore, "relevancy" during discovery, as defined in Rule 26, is much broader than relevancy at trial. "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Biliske v.*

*Am. Live Stock Ins. Co.*, 73 F. R. D. 124, 125 (W.D. OK. 1977). Discovery of such "relevant" information "is construed broadly to include 'any' matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Midland-Ross Corp. v. United Steelworkers of Am.*, 83 F.R.D. 426, 427 (W.D. PA. 1979) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)).

This broad definition of relevancy also applies to the discovery of documents. *Miller v. Fed. Express Co.*, 186 F.R.D. 376 (W.D. Tenn. 1999). Discovery of documents is permitted where the documents might lead to the discovery of admissible evidence. *Id.* With documents, as with discovery in general, relevance is determined by whether the information or documents sought relate to a claim, defense, or credibility of a witness. It also includes whether the information contained in the requested documents might reasonably lead to the discovery or location of relevant and admissible evidence. *Scouler v. Craig*, 116 F.R.D. 494 (N.J. 1987); *Hickman*, 329 U.S. at 507 ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into facts underlying the opponent's case.").

Courts considering motions to compel have held that the party objecting to production of documents has the burden of proving that the records are either not relevant or that the burden of production is so great as to outweigh the need for fair discovery and the goals of discovery. *Oleson v. K-Mart*, 175 F.R.D. 560, 565 (Kan. 1997); *Burke v. N.Y.C. Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). The party seeking to deny discovery has an affirmative duty to articulate facts, as opposed to mere conclusions, regarding the alleged lack of relevancy or burden. Additionally, for a relevance objection to be adequate, it must be plain enough and specific enough so that the court can understand in what way the discovery request is alleged to be inadequate. *Cappetta*, Civ. No. 3:08CV288, at 5.

Asset Acceptance objected to almost every one of the Plaintiffs' interrogatories and requests for production of documents as irrelevant. Just on the basis of relevance, it objected to 15 out of 19 interrogatories and 18 out of 22 requests for production of documents, as discussed below.

Plaintiffs' Interrogatory No. 1 asks the Defendant to:

> State the full names and job titles of all individuals who provided information in answering these Interrogatories, and for each individual, describe the knowledge that (s)he possesses regarding the Defendant's collection or attempted collection of money from the Plaintiffs. This Interrogatory specifically excludes the identity, knowledge, and work product of attorney(s) who represent the Defendant in this matter.

Ex. A, at 7. In response to this interrogatory, the Defendant referred the Plaintiffs to the verification of Kenneth Proctor, who assisted with the preparation of the interrogatories. Ex. F, at 3. However, the Defendant did not attach this verification to its answers, nor have the Plaintiffs received it to date. This interrogatory is relevant in that it seeks information about individuals who have knowledge about the Plaintiffs' claims such that they were able to answer the Plaintiffs' interrogatories. These individuals' knowledge is certainly relevant to the Plaintiffs' claims, and Plaintiffs would use the answer to this interrogatory in order to conduct depositions. As discovery is presently set to close on February 1, 2013, Plaintiffs are now not in a position to schedule these depositions and have suffered substantial prejudice.

Plaintiffs' Interrogatory No. 2 asks the Defendant:

> For each case in which the Defendant has been sued for violating 15 U.S.C. § 1692, *et seq.* or 47 U.S.C. § 227, *et seq.* for the five-year period preceding the filing date of the Complaint, state the name of the case, the case number, the jurisdiction in which it was filed and the outcome of the case (e.g. judgment for the Plaintiff, judgment for Asset Acceptance, or settled).

Ex. A, at 7. In response to this interrogatory, the Defendant is completely nonresponsive and instead "reasserts and incorporates by reference its objections to Interrogatory No. 1." Ex. E, at 4. This interrogatory is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions

taken against the Plaintiffs were in violation of federal law. Additionally, this evidence has significant probative value to show that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA. Further, this request has been ordered on numerous occasions by Judges Payne and Lauck against other Defendants represented by Troutman Sanders.

> Plaintiffs' Interrogatory No. 4 asks the Defendant:

> If you contend that the Plaintiffs are or have ever been personally liable to you for the accounts that are the subject of this lawsuit, state the dates the Plaintiffs became personally liable and specifically list all debits and credits applied to each of the accounts, the account numbers, and all facts upon which you relied in concluding that the Plaintiffs were personally liable for the specific amounts claimed and which comprise the total amount of money that you collected or attempted to collect from them. In the alternative, if you now believe that you collected or attempted to collect money from either Plaintiff that they did not owe, please state the amount of money that was collected as a result of an error or mistake.

Ex. A, at 8. In response to this interrogatory, the Defendant referred the judgments entered in its favor as it relates to the accounts at issue. Ex. E, at 5. This response is largely incomplete. The answer does not reflect the current balance of the Plaintiffs' account with the Defendant. This request is clearly relevant. Plaintiffs' claims all revolve around the Defendant's attempt to collect money that it claims that the Plaintiffs owe Defendant. The amount of money that the Defendant claims is owed, as well as its basis for believing that the Plaintiffs owe this money are relevant to the Plaintiffs' case.

> Plaintiffs' Interrogatory No. 6 asks the Defendant to

> Identify and describe fully any automated, mechanical, or computerized system used or any third party company that is hired or employed by Asset Acceptance, LLC through which automated dialers are implemented to place telephone calls to consumers or through which pre-recorded messages are delivered to consumers' telephones in connection with the collection of debts.

Ex. A, at 9. In response to this interrogatory, the Defendant responded that it uses the Cogent Software collection system and Ontario Systems Corporate Guaranteed Contact, equipped with

Voicetrak call recording system. Ex. E, at 6. This response is not a complete response to the question posed as the Defendant did not identify the system fully. The version of the software is not identified, nor is the model of the hardware. This information is relevant to the Plaintiffs' TCPA claims, as the Plaintiffs allege in their complaint that the Defendant used autodialers to place calls to their cell phone. Comp. ¶¶ 11, 20, 61-62. Plaintiffs are therefore entitled to discover information about the technology that the Defendant used to place these calls.

> Plaintiffs' Interrogatory No. 7 asks the Defendant to:
>
> Identify the business name, address, and telephone number of all persons, companies, corporations, or other entities who provided local or long distance telephone services of any kind to Defendant's business, as well as identifying the telephone numbers and account numbers for each such local and long distance service provider, for a period of one year prior to the date this lawsuit was filed.

Ex. A, at 9. In response to this interrogatory, the Defendant first irrelevantly recites the telephone numbers that the Plaintiffs provided to the Defendant (for the first of many times that the Defendant repeats this verbiage) and states that "the Plaintiff has failed to provide the subject employment phone number related to the claims pled by Ms. Walker in the Complaint." Ex. E, at 6–7. This is completely nonresponsive to the interrogatory. Further, Plaintiffs never limited their interrogatory to telephone numbers provided to the Defendant. These were provided as an accommodation in order to facilitate discussion of the facts of this case and possible resolution.  Next, the Defendant states that the providers of its telephone services are Qwest, AT&T and Global Crossing and provides their addresses and phone numbers. *Id.* The Defendant does not provide its telephone or account numbers with these entities. This information is relevant to the Plaintiffs' TCPA claims, as it will identify the number of calls that the Defendant placed to the Plaintiffs, which is necessary to calculate the damages that the Plaintiffs are entitled to under the TCPA. Additionally, the Defendant's account and telephone numbers are necessary to subpoena the Defendant's relevant

phone records from its telephone service providers. Again, with discovery set to close on February 1, 2013, Plaintiffs have now suffered substantial prejudice.

Plaintiffs' Interrogatory No. 8 asks the Defendant to "state the date and nature of each communication, including telephone and/or written communications, from the Defendant to each of the Plaintiffs within the one-year preceding the filing of this lawsuit, and identify all parties to the communication." Ex. A, at 9. In response to this interrogatory, the Defendant states that it will produce the relevant documents pertaining to the phone numbers that the Plaintiffs provided to them. Ex. E, at 8. This is not responsive to the Plaintiffs' request. The Plaintiffs did not ask for the records pertaining to the numbers that they provided, they asked for a list of the dates and nature of *each* communication that the Defendant had with each of the Plaintiffs. This includes all telephone calls, including calls to numbers that the Plaintiffs have not provided to the Defendants, as well as any written communications that the Defendant has had with either of the Plaintiffs. The Defendant did not produce any such communications. This information is clearly relevant to the Plaintiffs' TCPA claims, as TCPA damages are calculated based on the number of calls placed to a consumer. 47 § U.S.C. 227(b)(3). This information is also relevant to the Plaintiffs' FDCPA claims, as it concerns the accounts that are the basis of Plaintiffs' claims. This information is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiffs' Interrogatory No. 9 asks the Defendant to:

> State the date and nature of each communication, including telephone, electronic, and/or written communications, to or from Asset Acceptance, LLC and any third party, including another debt collector or consumer reporting agency, with regard to either of the Plaintiffs, their accounts that is the subject of this lawsuit, and/or any of their personal identifiers, and identify all parties to the communication.

Ex. A, at 9–10. In response to this interrogatory, the Defendant again irrelevantly recites the numbers that the Plaintiffs provided to the Defendant and that Plaintiff Walker has not provided the telephone number where it called her at her place of employment. Ex. E, at 9. This interrogatory

only seeks to discover information about calls to third parties, not to the Plaintiffs at work. Additionally, the Defendant states that it will produce the documents responsive to Plaintiff Shizas's claims and defenses and the "non-calling allegations" as pled by Plaintiff Walker. *Id.* This is not responsive to the Plaintiffs' interrogatory. Plaintiffs request a list, not a production of documents. Furthermore, the information is clearly relevant to the Plaintiffs' FDCPA claims. Plaintiff Shizas alleges that the Defendant called his girlfriend on multiple occasions and discussed his debt with her. Compl. ¶ 19. He is entitled to conduct discovery on this issue, as it is an issue alleged in the Complaint and denied by the Defendant. The information sought also pertains to the accounts that are the basis of Plaintiffs' claims. This information is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiffs' Interrogatory No. 10 asks the Defendant to "state the names, aliases, job title, business and home addresses and telephone numbers, dates of employment, and whether they were ever subject to reprimand or discipline for collection tactics of all the individual collectors who interacted with either of the Plaintiffs." Ex. A, at 10. In response to this interrogatory, the Defendant provides the name of one collector that interacted with Plaintiff Shizas, and does not provide any collectors that interacted with Plaintiff Walker. Ex. E, at 10. This interrogatory is relevant because it seeks information about individuals who interacted with the Plaintiffs and led the Plaintiffs to file a FDCPA claim against the Defendant. These individuals' knowledge is certainly relevant to the Plaintiffs' claims as it addresses the claims alleged by the Plaintiffs in their Complaint, and Plaintiffs would use the answer to this interrogatory in order to conduct depositions. Again, with discovery set to close on February 1, 2013, Plaintiffs have now suffered substantial prejudice.

Plaintiffs' Interrogatory No. 11 asks the Defendant to:

Identify and outline all training provided to every employee, including new employees and Legal Support employees, involved in the collection of consumer accounts, specifically identifying the following:
a)      The training content, timing, and duration;

    b)      All documents and audio or visual materials used in such training; and

    c)      Each person involved in providing such training.

Ex. A, at 10. In response to this interrogatory, the Defendant stated that it would produce documents responsive to the claims and defenses of the parties. Ex. E, at 11. This is not responsive to the Plaintiffs' request. Plaintiffs did not ask for the production of documents. Instead, they asked for an identification and outline of the training provided to every employee. The information sought by this interrogatory is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Additionally, it goes to show that the Defendant's actions were willful and, as a result, Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

Plaintiffs' Interrogatory No. 12 asks the Defendant to "identify all manuals, instructions, restrictions or other documents and/or materials that the Defendant uses to instruct its employees regarding the procedures involved with collecting debts from consumers, including those pertaining to its Legal Support employees." Ex. A, at 10. In response to this interrogatory, the Defendant that it would produce documents responsive to the claims and defenses of the parties. Ex. E, at 12. This is not responsive to the Plaintiffs' request. The Plaintiffs did not ask for the production of documents. Instead, they asked for an identification of employee instructional manuals. The information sought by this interrogatory is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Plaintiffs would seek to ask about these documents at the depositions. Again, with the close of discovery on February 1, 2013, the Plaintiffs have suffered prejudice. Additionally, this goes to show that the Defendant's actions were willful and as a result, Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

Plaintiffs' Interrogatory No. 13 asks the Defendant to:

> List and explain all abbreviations and code words, letters, numerals, or symbols used
> by the Defendant or its employees in its collection activities and collection logs.  In
> lieu of a code-by-code description, Plaintiffs will accept your provision and
> reference to a software manual or other document that provides the meaning of such
> codes.

Ex. A, at 11. In response to this interrogatory, the Defendant that it would produce documents

responsive to the claims and defenses of the parties. Ex. E, at 12. This is not responsive to the

Plaintiffs' request. The Plaintiffs did not ask for the production of documents. Instead, they asked

for a list and explanation of abbreviation and code words used in any manual provided, or in the

alternative, a reference to a manual providing the explanations. Neither was provided. The

information sought by this interrogatory is relevant because it will help to understand the manuals

that the Defendant provides to the Plaintiffs. As explained above, this information is relevant to the

Plaintiffs' claims because damages under the TCPA are higher if the Plaintiffs can prove that the

Defendant's violation of the statute was willful. Additionally, the Plaintiffs anticipate that the

information will be needed to understand the autodialer system manuals, which is relevant to the

Plaintiffs' TCPA claims.

Plaintiffs' Interrogatory No. 14 asks the Defendant to "identify and describe each document

and record known to the Defendant and which is related to either Plaintiff, any of the Plaintiffs'

personal identifiers, and/or the accounts that are the subject of this lawsuit." Ex. A, at 11. In

response to this Interrogatory, the Defendant states that it would produce documents responsive to

the claims and defenses of the parties. Ex. E, at 13. This is not responsive to the Plaintiffs' request.

The Plaintiffs did not ask for the production of documents. Instead, they asked for a list and

description of every document that is related to the Plaintiffs. This information is clearly relevant to

the Plaintiffs' TCPA claims, as TCPA damages are calculated based on the number of calls placed

to a consumer. 47 § U.S.C. 227(b)(3). This information is also relevant to the Plaintiffs' FDCPA

claims, as it concerns the accounts that are the basis of Plaintiffs' claims. This information is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiffs' Interrogatory No. 15 asks the Defendant to "state your net worth, gross revenue, and net revenue for the fiscal and/or calendar years 2009, 2010, and 2011, identify all individuals with knowledge of your computation of the same, and identify any annual report or financial statement for the fiscal and/or calendar years 2009, 2010, and 2011." Ex. A, at 11. In response to this interrogatory, the Defendant reasserts and incorporates its objections to Interrogatory No. 15 and does not provide any responsive information. Ex. E, at 14. The information sought by this interrogatory has again been ordered by many judges in this District and is relevant to the issue of treble damages.

Plaintiffs' Interrogatory No. 17 asks the Defendant to "identify and describe each claim made under each liability insurance policy in the last two years, including the date of the claim, claim number, the subject of the claim, the status of the claim, the resolution of the claim, and any amounts paid under each policy." Ex. A, at 12. In response to this interrogatory, the Defendant reasserts and incorporates its objections to Interrogatory No. 17 and does not provide any responsive information. Ex. E, at 15. The information sought by this interrogatory is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Additionally, this evidence goes to show that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

Plaintiffs' Request for Production No. 1 seeks "all documents in any form that relate to the Plaintiffs and/or the accounts that are the subject of this lawsuit, including, but not limited to, their entire collection files." Ex. B, at 1. In response to this request, the Defendant states that it will produce documents responsive to the claims and defenses of the parties as it relates to Plaintiff

Shizas, as well as documents related to the non-calling allegations contained in the Complaint with respect to Plaintiff Walker. Ex. F, at 3–4. While the Defendant did not provide the bates number range of documents that are responsive to this request, the Plaintiffs believes that it produced the general district court files for each of the Plaintiffs, two Bills of Sale, an Account statement pertaining to Shizas's account and a call log for Shizas in response to this request. It did not produce the entire collection file for either Plaintiff. The information sought by this request is relevant because it concerns Plaintiffs' FDCPA claims, as it concerns the accounts that are the basis of Plaintiffs' claims. This information is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiffs' Request for Production No. 2 seeks "all correspondence between you and either of the Plaintiffs or any third party that regards the Plaintiffs and/or the accounts that are the subject of this lawsuit." Ex. B, at 2. In response to this request, the Defendant responded that it would produce all documents "responsive to the claims and defenses of the parties". Ex. F, at 4. While the Defendant did not provide the bates number range of documents that are responsive to this request as required by Fed. R. Civ. P. 34(b), the Plaintiffs believe that it produced a single bill sent to Plaintiff Shizas in response to this request. The information sought by this request is relevant to the Plaintiffs' FDCPA claims. Plaintiff Shizas alleges that the Defendant called his girlfriend on multiple occasions and discussed his debt with her. Compl. ¶ 19. He is entitled to conduct discovery on this issue, as it is an issue alleged in the Complaint and denied by the Defendant. The information sought also pertains to the accounts that are the basis of Plaintiffs' claims.

Plaintiffs' Request for Production No. 3 seeks "all documents concerning either of the Plaintiffs' accounts and Defendant's efforts to investigate and collect thereon, including all internal collection records, collection screens, audit records, credit reports, skip trace reports, communication logs, and correspondence." Ex. B, at 2. In response to this request, the Defendant

states that it will produce documents responsive to the claims and defenses of the parties as it relates to Plaintiff Shizas, as well as documents related to the non-calling allegations contained in the Complaint with respect to Plaintiff Walker. Ex. F, at 5. While the Defendant did not provide the bates number range of documents that are responsive to this request, the Plaintiffs believes that it produced Plaintiff Shizas's Account statement, call log, Bill of Sale and general district court file, as well as Plaintiff Walker's Bill of Sale and general district court file in response to this request. It did not produce any other documentation requested by the response, such as internal collection records, collection screens, audit records, credit reports or skip trace reports.  The information sought by this request is relevant because to the Plaintiffs' FDCPA claims, as it concerns the accounts that are the basis of Plaintiffs' claims. This information is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiffs' Request for Production No. 4 seeks "all documents which relate to your contractual agreement(s) or other business relationships with any persons or entity(ies) that assigned or sold either of the Plaintiffs' accounts to you with respect to such account or any portfolio within which it was contained." Ex. B, at 2. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 6. While the Defendant did not provide the bates number range of documents that are responsive to this request, it produced the Bill of Sale for Shizas's account and the Bill of Sale for only one of Plaintiff Walker's accounts. The information sought by this request is relevant because it concerns the subject matter of the Plaintiffs' claims, specifically the accounts that the Defendant sought to collect from the Plaintiffs, leading to the Plaintiffs' FDCPA and TCPA claims.

Plaintiffs' Request for Production No. 5 seeks "All documents that were mailed or otherwise delivered to you by either of the Plaintiffs or by any third party that regard the Plaintiffs and/or the accounts that are the subject of this lawsuit." Ex. B, at 2. In response to this request, the Defendant

responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 6. The Defendant produced no documents responsive to this request. The information sought by this request is relevant because it concerns the subject matter of the Plaintiffs' claims, specifically the accounts that the Defendant sought to collect from the Plaintiffs, leading to the Plaintiffs' FDCPA and TCPA claims.

Plaintiffs' Request for Production No. 6 seeks "all documents that describe the organizational structure of Asset Acceptance, LLC." Ex. B, at 2. In response to this request, the Defendant reasserts and incorporates by reference its objections to Request No. 6. Ex. F, at 7. It did not provide any responsive documents to the Plaintiffs. This information sought by this request is relevant because it will help the Plaintiffs to establish possible witnesses that the Plaintiffs can depose regarding their claims, including the Defendant's higher level employees that would be in charge of supervising the actions of the debt collectors that interacted with the Plaintiffs and lead to the Plaintiffs' FDCPA claims.

Plaintiffs' Request for Production No. 8 seeks "all documents that describe or relate to how your collectors are compensated, including base pay and bonuses or incentives." Ex. B, at 3. In response to this request, the Defendant reasserts and incorporates by reference its objections to Request No. 8. Ex. F, at 8. It did not provide any responsive documents to the Plaintiffs. This information sought by this request is relevant because it goes to show that the Defendant's employees were encouraged to violate federal law in order to maximize the company's profit margin. This would help to establish that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

Plaintiffs' Request for Production No. 10 seeks "all manuals that describe, detail, or explain the operation of any codes within any computer program or software in which data has been compiled, created, stored, or organized pertaining to either of the Plaintiffs or any account(s)

attributed or related to them." Ex. B, at 3. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 9. While the Defendant did not provide the bates number range of documents that are responsive to this request, it produced one version of one manual titled "Permanent Notes and Abbreviations for Window 8". It did not produce the manuals for the systems that it identified in its answers to Plaintiffs' interrogatories. The information sought by this request is relevant because the Plaintiffs anticipate that the information will be needed to understand the autodialer system and other technical manuals requested by the Plaintiffs, which are relevant to the Plaintiffs' TCPA claims as discussed above.

> Plaintiffs' Request for Production No. 11 seeks:
>
> All and all documents summarizing, describing, instructing, detailing, or otherwise training any and all of Defendant's employees in each of the following areas:
> a) Defendant's collection policies;
> b) Defendant's collection procedures;
> c) Defendant's collection methods;
> d) Defendant's collection techniques;
> e) Defendant's collection tactics;
> f) Defendant's collection rules;
> e) Defendant's collection regulations; and
> f) Defendant's compliance with local, state, or federal laws, codes, or regulations.

Ex. B, at 3–4. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 9. The Defendant did not produce any documents responsive to this request. The information sought by this request is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Additionally, it goes to show that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

> Plaintiffs' Request for Production No. 12 seeks "all training, personnel, or other instruction manuals used by the collection personnel who are employed by or supervised by Asset Acceptance,

LLC." Ex. B, at 4. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 10. The Defendants did not provide any documents responsive to this request. The information sought by this request is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Additionally, it goes to show that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

> Plaintiffs' Request for Production No. 13 seeks

> All collection software manuals and/or instruction guides for each and every computer system, software package, software system, or other electronic or non-electronic device used in any manner in Asset Acceptance, LLC's collection process, including but not limited to any automated or computerized dialing system by which calls are placed to consumers.

Ex. B, at 4. In response to this request, the Defendant reasserts and incorporates by reference its objections to Request No. 13. Ex. F, at 10. It did not provide any responsive documents to the Plaintiffs. This information sought by this request is relevant to the Plaintiffs' TCPA claims, as the Plaintiffs allege in their complaint that the Defendant used autodialers to place calls to their cell phone. Comp. ¶¶ 11, 20, 61-62. Plaintiffs are therefore entitled to discover information about the technology that the Defendant used to place these calls.

> Plaintiffs' Request for Production No. 15 seeks "all of Asset Acceptance, LLC's human resource department records, employment files, and other documents for the individual collectors who interacted with either of the Plaintiffs, including but not limited to, any disciplinary notices, reprimands, incident reports, and electronic recordings." Ex. B, at 5. In response to this request, the Defendant refers the Plaintiffs to the Defendant's objections and responses to Interrogatory No. 10. The Defendant did not provide any documents responsive to this request. The information sought by this request is relevant because it seeks information about the individuals who interacted with the

Plaintiffs and led the Plaintiffs to file a FDCPA claim against the Defendant. This information contained in these employee files would be used to conduct a deposition of the employees. Again, with discovery set to close on February 1, 2013, Plaintiffs have now suffered substantial prejudice.

Plaintiffs' Request for Production No. 17 seeks:

> All documents recording, documenting, or otherwise tracking Asset Acceptance, LLC's collection efforts related in any way to either Plaintiffs' alleged debts that are the subject of this lawsuit, from July 26, 2008 to the present, including but not limited to:
> a)  Inbound or outbound telephone calls to or from either of the Plaintiffs;
> b)  Inbound or outbound United States mail to or from either of the Plaintiffs.

Ex. B, at 5. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties with regard to Plaintiff Shizas and asserts that it did not place any calls to Plaintiff Walker's cell phone number provided by the Plaintiffs. Ex. F, at 13. This is not responsive to this request, as the request is not limited to phone calls. Instead, it seeks all documents tracking the Defendant's collection efforts of any of the Plaintiffs' alleged accounts with the Defendant. While the Defendant did not provide the bates number range of documents that are responsive to this request, it produced a call log for Plaintiff Shizas. Defendant later supplemented its response with recordings of some calls to (presumably) Plaintiff Shizas. Ex. G. The information sought by this request is relevant because it concerns the subject matter of the Plaintiffs' claims, specifically the accounts that the Defendant sought to collect from the Plaintiffs, leading to the Plaintiffs' FDCPA and TCPA claims.

Plaintiffs' Request for Production No. 18 seeks:

> All printouts of available computer, mechanical or other reports printed, prepared, or otherwise created using any computer system, software package, software system, or other electronic or non-electronic device used in any manner in Defendant's collection process, which include either of the Plaintiffs' names, address, telephone number(s), employer, account number, or any other information which is personally identifiable to either of the Plaintiffs.

Ex. B, at 5. In response to this request, the Defendant states that it will produce documents responsive to the claims and defenses of the parties as it relates to Plaintiff Shizas, as well as documents related to the non-calling allegations contained in the Complaint with respect to Plaintiff Walker. Ex. F, at 14–15. The Defendant provided a single printout of Shizas's account. It did not provide any such documents for Plaintiff Walker. The information sought by this request is relevant because it concerns the subject matter of the Plaintiffs' claims, specifically the accounts that the Defendant sought to collect from the Plaintiffs, leading to the Plaintiffs' FDCPA and TCPA claims.

Plaintiffs' Request for Production No. 19 seeks "all Complaints filed against you in which you have been sued for alleged violation(s) of 15 U.S.C. § 1692, *et seq.* and/or 47 U.S.C. § 227, *et seq.* in the five-year period preceding the filing date of this lawsuit." Ex. B, at 6. In response to this request, the Defendant reasserts and incorporates by reference its objections to Request No. 19. Ex. F, at 15. It did not provide any responsive documents to the Plaintiffs. This information sought by this request is relevant because it will tend to show that Defendant was on notice of the requirements of both the FDCPA and the TCPA and knew or should have known that the actions taken against the Plaintiffs were in violation of federal law. Additionally, it goes to show that the Defendant's actions were willful and as a result Plaintiffs are entitled to a higher award of statutory damages under the TCPA.

Plaintiffs' Request for Production No. 20 seeks "All documents concerning the amounts listed as owing in your collection letters to either of the Plaintiffs, including contracts, invoices, formulas, instructions, calculations, checks or other payments received, logs, and bookkeeping or accounting entries." Ex. B, at 6. In response to this request, the Defendant reasserts and incorporates by reference its objections to Request No. 20. Ex. F, at 15. While the Defendant did not provide the bates number range of documents that are responsive to this request, the Plaintiffs believes that it produced Plaintiff Shizas's Account statement, Bill of Sale, Statement of Account dated July 27,

2011, and his general district court file, as well as Plaintiff Walker's Bill of Sale and general district court file in response to this request. It did not produce any other documentation requested by the response, such as formulas, instructions, calculations, checks or other payments received, logs, and bookkeeping or accounting entries. The information sought by this request is relevant because it concerns the subject matter of the Plaintiffs' claims, specifically the accounts that the Defendant sought to collect from the Plaintiffs, leading to the Plaintiffs' FDCPA and TCPA claims.

Plaintiffs' Request for Production No. 21 seeks "the text of any voicemail or prerecorded messages left for either of the Plaintiffs." Ex. B, at 6. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 16. The Defendant did not produce any documents responsive to this request. Defendant later supplemented its response by providing recordings of some calls to Plaintiff Shizas. Ex. G. The information sought by this request is relevant because Plaintiffs allege that the Defendant violated the TCPA by using autodialers to call their cell phones without their prior consent. Compl. ¶¶ 11, 20, 61-62. The information sought will be used to show that a violation of the TCPA did in fact occur and will be used to establish damages, as TCPA damages are based on the number of calls placed to the consumer. 47 § U.S.C. 227(b)(3).

Plaintiffs' Request for Production No. 22 seeks "a plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above." Ex. B, at 6. In response to this request, the Defendant responded that it would produce all documents responsive to the claims and defenses of the parties. Ex. F, at 16. While the Defendant did not provide the bates number range of documents that are responsive to this request, it produced a single document titled "Permanent Notes and Abbreviations for Window 8" dated August 10, 2007. The information sought by this request is

relevant because the Plaintiffs anticipate that the information will be needed to understand the autodialer system manuals, which is relevant to the Plaintiffs' TCPA claims as discussed above.

Defendants also assert several relevancy objections to Plaintiffs' discovery requests on the basis that they "seek information about accounts not at issue in the Complaint." Ex. C, at 8–10, 13, 15–16; Ex. D, at 3. However, Plaintiffs' complaint does not state that the claims alleged are limited to only one account. In fact, it specifically acknowledges that there may have been more than one of Plaintiff Walkers debts assigned to the Defendant for collection. Compl. ¶ 5 ("the Defendants allege that *debts* owed by Plaintiff Walker were consigned, placed, or otherwise transferred to the Defendant for collection" (emphasis added)). The Complaint does not limit the Plaintiffs' claims to only one account; instead, it alleges violations for all of the Plaintiffs' accounts held by Asset Acceptance and therefore Asset's objections to Interrogatory No. 1, and Request for Production Nos. 10, 11, 12, 13, 17, 18, 20, and 21 are not proper and should be overruled.

**C.     Asset Acceptance's "Overbroad" and "Burden" Objections Are Improper.**

To voice a successful objection to a discovery request, an objecting party may not simply intone the familiar "overly broad, burdensome, oppressive and irrelevant" litany. The mere statement that a discovery request is burdensome is not adequate to voice a successful objection to discovery. *Mainstreet Collection, Inc. v. Kirklands, Inc.,* 270 F.R.D. 238 (E.D.N.C. 2010) (finding that a mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *see also Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3rd Cir. 1982); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482 (5th Cir. 1990); *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir. 1985). The objecting party must provide more to support its claim. It must demonstrate specifically how, given the liberal construction afforded the federal discovery rules, the discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the

burden. *Cappetta*, Civ. No. 3:08CV288, at 6–7. *See also Marens v. Carrabba's Italian Grill*, 196 F.R.D. 35, 37 (D. Md. 2000) (determining that where there is a claim that the discovery sought is overburdening, the party making the claim must articulate with specificity the nature and costs associated with the claimed burden and why these are alleged to outweigh the goal of liberal discovery); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *Burns v. Image Films Entm't*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

The duty of establishing the propriety of an objection based on a claim that the request is unduly burdensome is on the objecting party. *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (Kan. 1991); *see also Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 353 (N.J. 1990); *G-69 v. Degnan*, 130 F.R.D. 326, 331 (D.N.J.1990); *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C. 1978). The objection must show with specificity how the discovery request is overly broad, burdensome, or oppressive and submit affidavits in support or offer evidence which reveals the nature of the burden. *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 59–60 (D.C. 1984); *see also Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42–43 (S.D.N.Y. 1984); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979); *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991); *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("The onus is therefore on the party objecting to discovery to state the grounds for the objection 'with specificity.' Rule 33(b)(4). Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice."). Without a clear showing that the request is truly 'overly' burdensome, the objection will not be allowed. The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden. *Fagan v.*

26

*District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991); *see also Luey v.Sterling Drug, Inc.*, 240 F. Supp. 632, 634–35 (W.D. Mich. 1965); *United States v. Nysco Labs.*, 26 F.R.D. 159, 161–62 (E.D.N.Y. 1960).

In this case, the Defendant has objected to several interrogatories and requests for production on the grounds of over breadth and/or undue burden. *See* Ex. C; Ex. D. The objections are unaccompanied by any explanation or evidence of the burden. This exact misconduct was recently considered and criticized by Magistrate Judge Lauck in *Cappetta v. GC Services Ltd. P'ship*, Civ. No. 3:08CV288 (E.D. Va. Dec. 24, 2008), ECF 65. Judge Lauck rejected similarly boiler-plate and unexplained assertions of burden and explained, "In order to overcome the liberal construction afforded the federal discovery rules, a party objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden." *Id.* at 6–7. Since no such affidavits or other evidence has been presented to the Plaintiffs, the Defendant's over breadth and undue burden objections to Interrogatory Nos. 2, 4, 5 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, as well as Request for Production Nos. 1, 2, 3, 4, 5, 8, 10, 11, 12, 13, 15, 17, 18, 19, 20, 21, and 22 are improper and should be overruled.

**D.     Asset Acceptance has failed to properly assert attorney-client privilege or work product protections.**

First, the Defendant has failed to provide any privilege log at all, even after several extensions granted by the Plaintiffs. Both attorney-client and work product privileges are therefore waived. Notwithstanding Asset Acceptance's use of general attorney-client privilege, work product doctrine, or any other applicable privilege objections as a basis to withhold the production of documents, such protections are not broadly construed. "The party objecting to discovery has the burden of establishing the existence of a privilege by establishing all elements of the privilege."10 Fed. Proc., L. Ed. § 26:107; *see also Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 271–72 (E.D. Va. 2004). Such burden may only be met with a proper "evidentiary showing based on

competent evidence, and cannot be discharged by mere conclusory assertions." *Id.* "The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived." *Zeus Enters. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 244 (4th Cir. 1999); *see also E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010).

Because the attorney-client privilege restricts the discovery of the truth, it should be narrowly construed and recognized "only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *In re Grand Jury Subpoena*, 341 F.3d 331, 62 Fed. R. Evid. Serv. 190 (4th Cir. 2003). This Court has succinctly outlined the complex thresholds required to meet the attorney-client privilege "for each document:"

> (1) the asserted holder of the privilege is or has sought to become a client;
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. at 272 (citations omitted). Similarly, in order to establish the applicability of the work product privilege, a party must show, "as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495 (1947); *In re Grand Jury Proceedings*, 102 F.3d at 750.

Rule 26, which governs the discovery process, also provides that a party withholding information under a claim of privilege or attorney work product must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or

disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A). The Federal Rules and the Local Rules are clear that both a failure to provide a timely or complete privilege log that gives a meaningful description of the document withheld will both constitute a waiver of the privilege. A privilege log must also be provided at the time the party objects to the Request. The Defendant has provided neither. Asset Acceptance failed to specifically identify any documents that would be protected under a claim of privilege.  As a result, its general claim of privilege and work product doctrine is not proper or effective and its objections to Interrogatory Nos. 1, 3, 9, 14 and 18, as well as its objections to Requests for Production Nos. 1, 2, 3, 4, 14, and 16 should be overruled.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court: (1) overrule the Defendant's objections to Plaintiffs' discovery; (2) grant the Plaintiffs' Motion to Compel Full Discovery Responses by Asset Acceptance; (3) extend Plaintiffs' time within which to conduct discovery; and (4) grant the Plaintiffs any such further relief that the Court deems just and proper.

Respectfully submitted,
**BRENDA WALKER and
ELETHRIOS SHIZAS**

By:_____/s/_____
            Of Counsel

Janelle E. Mason, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:    (703) 273-7770
Facsimile:    (888) 892-3512
janelle@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel:    804-697-5410
Fax:    804-698-5118
david.anthony@troutmansanders.com

*Counsel for the Defendant*

_____/s/_____
Janelle E. Mason, VSB No. 82389
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:    (703) 273-7770
Facsimile:    (888) 892-3512
janelle@clalegal.com